Honorable George E. Murray State Senator, District 26 763 New Ballas Road South Creve Coeur, Missouri 63141
Dear Senator Murray:
This official opinion is in response to your request for a ruling on the following question:
 "Does the Director of Revenue have the right or duty to grant a use tax exemption in the case of title transfer of motor vehicles from an individual to a corporation in which he owns 100% of the stock, where the corporation simultaneously assumes liability for the pledged debt on such vehicles but did not receive any stock, cash or other consideration, in a transfer recognized under Section 351 of the Internal Revenue Code of 1954, and where no taxable gain or loss is realized by either the individual or the corporation?"
In your request you set out the following facts:
 "An individual owns 100% of the stock of a corporation which has poor credit. The individual purchases certain vehicles, paid the sales taxes of $26,481.00 on them, and leased them to the corporation on a net cost basis. Several years later the corporation achieved financial stability and the banks agreed to let the corporation assume liability for all indebtedness in the vehicles and release the individual. The actual book value of the vehicles at time of transfer was $329.00 in excess of liability assumed. The corporation did not pay anything to the individual — no cash, stock or other consideration.
 "Under generally accepted accounting principles, the C. P. A. firm recorded the transferred assets on the corporate books at $500,000 (fair market value) rather than the then book value of approximately $200,329, or the $200,000 in assumed liabilities. The I. R. S. has treated the $300,000 excess as a non-taxable contribution to capital. This is a recognized Section 351 transfer, tax-free.
 "Your further attention is directed to Section 144.450, R. S. Mo., which states in part `The tax imposed by Section 144.440
shall not apply to motor vehicles on account of which the sales taxes provided by Section 144.010 144.510 shall have been paid.'
 "Notwithstanding this, the Missouri Department of Revenue requested the corporation to pay use taxes on the title transfer and declined to issue an exemption certificate."
It must be pointed out, ab initio, that while taxing statutes are generally construed in favor of the taxpayer, tax exemption statutes are construed strictly against the taxpayer. Tigerv. State Tax Commission, 277 S.W.2d 561 (Mo. 1955); AmericanBridge Co. v. Smith, 179 S.W.2d 12 (Mo. 1944). It follows, then, that unless there is a specific tax exemption authorized by statute, the Director of Revenue cannot grant such an exemption.
Section 144.440.1, RSMo 1969, provides that:
 "In addition to all other taxes now or hereafter levied and imposed upon every person for the privilege of using the highways of this state, there is hereby levied and imposed a tax equivalent to three percent of the purchase price, as defined in section 144.070, which is paid or charged on new and used motor vehicles and trailers purchased or acquired for use on the highways of this state which are required to be registered under the laws of the state of Missouri."
Section 144.070.2, RSMo 1969, defines purchase price in the following manner:
 "As used above, the term `purchase price' shall mean the total amount of the contract price agreed upon between the seller and the applicant in the acquisition of said motor vehicle or trailer, regardless of the medium of payment therefor."
In National Dairy Products Corporation v. Carpenter,326 S.W.2d 87, 90 (Mo. 1959), the court provided a further explanation of the term purchase price:
 ". . . The words `purchase price' may be found in each of the first three subsections of Sec. 144.440, supra. The words `purchase price' imply a sale or a contract of exchange. The purchase price is the consideration paid for an object involved in a sale. . . .
 ". . . As we understand that definition, it means that the tax levied by Sec. 144.440, supra, applies to all transactions where a motor vehicle is the subject of an exchange or sale contract. . . ."
From the foregoing, it is apparent that the use tax imposed under Section 144.440 applies in all cases in which a motor vehicle, used or new, is exchanged for consideration. Moreover, the statutory definition of purchase price indicates that the medium of payment of the consideration is of no consequence.
In addition, the Supreme Court of Missouri held in Swiss-AmericanImporting Company v. Variety Food Products Company,436 S.W.2d 770, 774 (St.L. Ct.App. 1968), that a transfer of partnership property for corporate stock was a sale as that term is broadly defined. The court stated that:
 "This exchange of partnership property for corporate stock was a `sale' as that term is broadly defined. In Schulte v. Crites, Mo.App., 300 S.W.2d 819 [2], the court said: `A sale ordinarily is defined as a contract to transfer property rights for money paid or promised to be paid, but the term is broad enough to include the transfer of property for any sort of valuable consideration.' And in Kennerly v. Somerville, 68 Mo.App. 222, 1. c. 225, the court tersely said: `Moreover, there is no substantial distinction between a sale and an exchange. In both cases the title is absolutely transferred and the same rules of law govern each.'" (Emphasis added)
In your hypothetical statement of facts, you state that the corporation assumed the stockholder's outstanding indebtedness on the vehicles. It is the opinion of this office that the assumption of this liability in exchange for the vehicles constitutes valuable consideration. Accordingly, the exchange constitutes a sale, as the term is generally defined and implied in the definition of "purchase price." Said exchange, then, is taxable under Section 144.440.
The question then is whether the transfer of the motor vehicles to the corporation is exempt from the use tax under Section144.450, RSMo 1969. That provision reads as follows:
 "In order to avoid double taxation under the provisions of sections 144.010 to 144.510, any person who purchases a motor vehicle or trailer in any other state and seeks to register it in this state shall be credited with the amount of any sales tax or use tax shown to have been previously paid by him on the purchase price of such motor vehicle or trailer in such other state. The tax imposed by section 144.440 shall not apply to motor vehicles or trailers on account of which the sales tax provided by sections 144.010 to 144.510 shall have been paid, nor to motor vehicles or trailers brought into this state by a person moving any such vehicle into Missouri from another state who shall have registered and in good faith regularly operated said motor vehicle or trailer in said other state at least ninety days prior to the time it is registered in this state, nor to motor vehicles or trailers acquired by registered dealers for resale, nor to motor vehicles or trailers purchased, owned or used by any religious, charitable or eleemosynary institution for use in the conduct of regular religious, charitable or eleemosynary functions and activities, nor to motor vehicles owned and used by religious organizations in transferring pupils to and from schools supported by such organization, nor where the motor vehicle or trailer has been acquired by the applicant for a certificate of title therefor by gift or under a will or by inheritance, and the tax hereby imposed has been paid by the donor or decedent, nor to any motor vehicle or trailer owned or used by the state of Missouri or any other political subdivision thereof, nor by an educational institution supported by public funds, nor to farm tractors."
This statutory provision specifically exempts from taxation any motor vehicle or trailer on account of which the sales tax shall have been paid. Keeping in mind the principle of statutory construction that exemption provisions are to be strictly construed against the taxpayer, the question is whether the payment of sales tax by the stockholder who later transferred the vehicles to a corporation in which he held one hundred percent of the outstanding stocks exempts the corporation from paying the use tax imposed under Section 144.440.
To properly understand this exemption, it is necessary to first consider the purpose of a use tax. In State ex rel. TransportManufacturing Equipment Co. v. Bates, 224 S.W.2d 996, 999
(Mo.Banc 1949), the court discussed the legislative intention as to the use tax imposed by Section 11412, Laws 1947, the predecessor of Sections 144.440 and 144.450:
 ". . . The legislative intention as to this use tax is to so complement the sales tax on motor vehicles that motor vehicles sold in or used in the state attain a parity of taxation for the support of the state government. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; Morrison Knudsen Co. v. State Board of Equalization, 58 Wyo. 500, 135 P.2d 927; In re Los Angeles Lumber Products Co., 45 F. Supp. 77. The two taxes are intended to and do bring about the same result. Each are taxes. Each are taxes upon an identical class of personal property. They tax different phases of the privilege of purchasing, owning and using motor vehicles upon the highways of the State. The payment of the sales tax or the payment of the use tax is a condition precedent to the issuance by the state to the owner of a title certificate to the motor vehicle. The payment of the tax in either instance (sales tax or use tax) brings about the same result, the right to be issued a Certificate of Title. As to each class of motor vehicles (those purchased within and those purchased without the state) the use tax but equalizes the State's burden of raising revenue."
It is clear from the foregoing that the use tax imposed under Section 144.440 compliments the state sales tax imposed under Sections 144.010 to 144.510. It is this office's opinion that the sentence in Section 144.450 which exempts motor vehicles or trailers from the use tax imposed under Section 144.440 on account of which the state sales tax shall have been paid precludes the imposition of the use tax when the purchase transaction has already been subjected to the sales tax. That is, this exemption preserves the complimentary nature of the use tax by foreclosing the imposition of both the use and sales tax on one purchase transaction. It does not, however, mean that once a sales tax has been imposed on the purchase of a motor vehicle or trailer, the state is foreclosed from imposing the use tax on subsequent purchases.
The response to your hypothetical set of facts, then, is that the transfer of motor vehicles to a corporation by an individual who owns one hundred percent of the stock of that corporation is subject to the use tax imposed under Section 144.440; and, the exemption in Section 144.450 (which states that the tax imposed by Section 144.440 shall not apply to motor vehicles on account of which the sales tax provided by Sections 144.010 and 144.510
shall have been paid) does not preclude the imposition of the use tax even though that individual paid sales tax on the initial purchase.
CONCLUSION
It is the opinion of this office that the Director of Revenue does not have the right or duty to grant a use tax exemption in the case in which an individual transfers motor vehicles to a corporation in which he owns one hundred percent of the stock and the corporation assumes the outstanding liability on said motor vehicles.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Clarence Thomas.
Your very truly,
 JOHN C. DANFORTH Attorney General